IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARSHA WHITE WALLER, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-22-1156 |
| § | |
| MARIA ESCAMILLA, § | |
| NICK WHIDDON § | |
| NAME UNKNOWN, and § | |
| INDEPENDENT FINANACIAL § | |
| BANK, § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

This case arises from a dispute at a bank between some of its employees and an individual who came in to cash a check. The plaintiff, Marsha White Waller, represents herself. She alleges that when she went to Independent Financial Bank to cash a check, the bank declined to do so, citing a recent increase in the number of fraudulent checks. After a verbal exchange, Waller alleges that the bank manager kept her check and driver's license and told her to leave, but Waller refused. Both Waller and the manager called the police. Waller alleges that when the police officers arrived, the bank employee placed a phone call, presumably to the issuer of the check; the manager apologized to Waller; and the bank cashed her check. Despite the apology and the service, Waller sued, alleging that the bank's initial refusal to cash the check subjected her to racial profiling and unsubstantiated allegations of a fraudulent check.

Waller asserts a race discrimination claim under 42 U.S.C. §§ 1982 and 1983, as well as a claim for defamation. The defendants moved to dismiss. Waller filed a response, and the defendants replied.

Based on the pleadings, motions, and applicable law, the court grants the motion to dismiss without prejudice and with leave to amend, because the present record does not show that amendment would be futile. An amended complaint may be filed no later than August 19, 2022.

The reasons for these rulings are given below.

I.     **Background**

Marsha White Waller, an African American woman, sought to cash a $2,000 check at the Independent Financial Bank. (Docket Entry No. 1 at ¶ 5). She alleges in her complaint that she was told by a bank employee, Maria Escamilla, that the check could not be cashed. (*Id.* at ¶ 6). The bank manager, Nick Whiddon, explained that the bank "had received a lot of fraudulent checks." (*Id.* at ¶ 7). After Waller asked whether he was insinuating that her check was fraudulent, Whiddon became "agitated and upset." (*Id.* at ¶¶ 8–9). Whiddon allegedly said that he was going to keep the check and asked Waller to leave. (*Id.* at ¶ 9). Waller refused to leave before she got her driver's license back. (*Id.* at ¶ 10). Whiddon said that he was going to cut up Waller's driver's license and was going to call the police. (*Id.* at ¶ 11). Waller then started recording the incident with her cellphone. (*Id.* at ¶ 13). A bank employee allegedly told Waller that her check was fraudulent, and Whiddon tried to have security remove Waller from the bank. (*Id.* at ¶ 15). Both Waller and Whiddon called the police. (*Id.* at ¶ 16). The bank then called Waller's friend, who confirmed that he wrote the check. Whiddon apologized to Waller and cashed the check. (*Id.* at ¶ 17).

Waller included more details and allegations in her response to the motion to dismiss. (Docket Entry No. 14). Waller alleges that the check she presented for cashing was properly filled out, signed, and she was the sole payee. (*Id.* at 4). Before the bank employee told Waller that her check could not be cashed, the employee made a phone call to "verify the check." (*Id.*). Whiddon,

2

the bank manager, told Waller that he was concerned that her check was fraudulent. (*Id.*) Waller's mother was present for this statement. (*Id.* at 5). After the police arrived, they spoke with Waller, Whiddon, and the bank employee. (*Id.*). After a phone call—presumably to the friend who had issued Waller the check—Whiddon apologized and cashed the check. (*Id.*). Waller requested a receipt; Whiddon refused. (*Id.*). The police officer then retrieved a receipt from Whiddon and gave it to Waller. (*Id.*). Waller alleges that she was treated by the bank as though she was a criminal. (*Id.* at 6). Waller alleges that she was treated unfairly because she is a black woman. (Docket Entry No. 1 at ¶ 18). She was embarrassed and "in tears" as a result of this incident. (*Id.*). Waller alleges that the bank's treatment of her constituted racial discrimination and a violation of her rights under the Eighth and Fourteenth Amendments. (*Id.* at ¶¶ 19, 22, 24). She sued the bank; Whiddon, the manager; and Escamilla, the employee, under 42 U.S.C. §§ 1982 and 1983, and for defamation claim. (*Id.* at 3, ¶ 1).

Waller included new allegations and a claim under 42 U.S.C. §1981 in her response to the motion to dismiss. (Docket Entry No. 14 at 4). The plaintiff "cannot use a response to a motion to dismiss as a backdoor to add allegations that she did not plead in her amended complaint." *McDavid v. Hous. Indep. Sch. Dist.*, No. CV H-21-993, 2021 WL 4555241, at *4 (S.D. Tex. Oct. 5, 2021). The court includes these additional facts and analyzes the additional claim only for the purpose of addressing whether leave to amend is futile.

II. **The Legal Standards**

    A. **The Motion to Dismiss**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to

relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial

4

notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

### B. Pro Se Pleadings

Because Waller is representing herself, the court construes her filings liberally, subjecting her to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But even under this lenient standard, self-represented litigants are still required to "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)). "Pro se litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (citations omitted).

## III. Analysis

### A. Sections 1981 and 1982

Waller raised a claim under § 1981 in response to the motion to dismiss. Section 1981 protects the right to make and enforce contracts. This protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Section 1982 protects the rights of non-white citizens to "hold and acquire property on an equal basis with white persons." *City of Memphis v. Greene*, 451 U.S. 100, 122 (1981); 42 U.S.C. § 1982. Both sections apply to "private and public" acts. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968). Sections 1981 and 1982 are generally construed "in tandem." *Morris v. Off. Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Both sections require the plaintiff to show: "(1) that she is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001).

### 1. Member of a Racial Minority

As an African American woman, Waller is a member of a racial minority, satisfying the first requirement of a § 1981 and § 1982 claim.

### 2. Intent to Discriminate on the Basis of Race

To allege intentional discrimination, the plaintiff must allege facts that could show that the defendant's interference with the plaintiff's rights was racially motivated. A plaintiff can allege discriminatory intent through direct or circumstantial evidence. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). Alleging facts plausibly showing that "similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing'" a discrimination claim. *Id.* (quoting *Crosby v. Kilgore*, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. 1993)). By contrast, "naked allegations" of discriminatory intent are not enough. *Body by Cook*, 869 F.3d at 386. Courts also hold employers liable for the discriminatory actions of their employees. *See Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 763 (5th Cir. 1986) (the "imposition of vicarious liability on a private employer under section 1981" is permissible).

6

Waller alleges that Whiddon is a "racist bank manager." (Docket Entry No. 1 at ¶ 17). She also alleges that she was subjected to "cruel and unusual racial discrimination." (*Id.* at ¶ 19). Waller alleges that the situation happened "all because a [sic] African American woman tried to cash a 2000 dollar check at a bank managed by a judging white man." (*Id.* at ¶ 25). In Waller's response, she alleges that Independent Financial Bank treated her "differently (or disparately)" compared to "any of its hundreds of other customers who have attempted to cash a check." (Docket Entry No. 14 at 6). All this is conclusory. Waller has not alleged facts that could plausibly show that the defendants treated nonminorities in the same situation more favorably.

A similar set of facts was alleged in *Barfield v. Com. Bank, N.A.*, 484 F.3d 1276, 1281 (10th Cir. 2007). The plaintiff, an African American man, went to a bank and requested change for a $50 bill. *Id.* at 1277. The bank refused to give him change because he was not an account holder. *Id.* A friend of the plaintiff's father, who was white, made the same request of the bank the next day. *Id.* The bank gave the friend change without asking about his account holder status. *Id.* Later, the plaintiff's father asked for change; the bank refused because he was not an account holder. *Id.* The bank did not contest that the pleadings met the racial discrimination prong. *Id.* at 1278.

*Barfield* illustrates what is missing from Waller's allegations. The *Barfield* plaintiff alleged multiple instances of the bank treating white and African American customers differently by inquiring about their account holder status. Waller failed to allege an instance in which the bank allowed a non-African American in a similar situation to cash a check, while refusing Waller's request to do so.

Another case, *Brown v. Harford Bank*, No. ELH-21-0096, 2022 WL 657564, at *1 (D. Md. Mar. 4, 2022), is similar. The bank teller took the check from the plaintiff, an African American

7

woman, locked it in the bank's vault, confiscated the plaintiff's identification, accused her of attempting to cash a fraudulent check, and called the police. *Id.* at *2. The teller told another bank employee that "they are always lying" and noted that the plaintiff was "a black woman" when calling the police. *Id.* The police, along with the bank manager, verified that the check was not fraudulent. *Id.* The plaintiff asked the teller to return her identification, but the teller refused. *Id.* at *3. The African American police officer also asked the teller to return the plaintiff's identification, but the teller again refused. *Id.* The teller returned the plaintiff's identification only when a white police officer asked for it and gave it to the plaintiff. *Id.* The next day, the plaintiff returned to the bank to retrieve her check. *Id.* A bank employee told her that the bank was closed. *Id.* The plaintiff saw a non-African American customer enter the bank during the same period. *Id.* The *Brown* court reasoned that these allegations stated a claim sufficient to survive a motion to dismiss. *Id.* at *13. But unlike the plaintiff in *Brown*, Waller does not point to any statements made by Escamilla or Whiddon that contain a reference to race or to instances of disparate treatment based on race.

Waller cites *Maldonado v. FirstService Residential, Inc.*, No. H-20-1484, 2021 WL 2517542, at *1 (S.D. Tex. June 18, 2021), to show that she has successfully alleged facts giving rise to a reasonable inference that Waller's "status as a black female played a role in [the defendants'] denial of basic banking services." (Docket Entry No. 14 at 9). In *Maldonado*, the plaintiffs, who are Puerto Rican, alleged that they were sent violation notices for parking in their driveway and on their street, but that white residents parked in the same way and did not receive violation notices. *Id.* They also alleged that white residents and neighbors made racially charged statements to and about them. *Id.* at *6. The court denied the dismissal motions. Again, there

8

were specific allegations of disparate treatment and racially charged remarks. These allegations are missing here.

In *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 384 (5th Cir. 2017), the plaintiff's African-American-owned automotive repair shop was refused entry into insurance companies' direct repair programs. The plaintiff alleged that he was told that the program was no longer admitting shops, but that less qualified non-minority owned shops with inferior equipment were admitted. *Id.* at 387. These allegations were sufficient. *Id.* Waller does not plead facts that could show that similarly situated non-minority individuals seeking to cash checks received better treatment than she did.

Waller fails to state a claim under §1981.

### 3. Activities Covered by § 1981

The general rule for a successful claim under § 1981 is that "the plaintiff must demonstrate the loss of an actual, not speculative, or prospective, contract interest." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (citing *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751–52 (5th Cir. 2001). Courts have recognized an exception when additional terms are imposed on the normal terms or benefits of a contract. *Craig v. US Bancorp*, No. Civ. 03-1680-AA, 2004 WL 817149, at *3 (D. Or. Apr. 14, 2004). In retail and restaurant contexts, this exception has applied when a plaintiff is required to do something extra in order to receive the same service as other customers, such as changing clothes prior to entry, prepaying for food, or showing identification to enter a store. *Id.* (citing *Joseph v. N.Y. Yankees P'shp*, No. 00 Civ. 2275, 2000 WL 1559019 (S.D.N.Y. Oct. 19, 2000), *Bobbitt v. Rage, Inc.*, 19 F.Supp.2d 512 (W.D.N.C. 1998), *Washington v. Duty Free Shoppers, Ltd.*, 710 F.Supp. 1288 (N.D. Cal. 1988)).

9

Courts have applied this exception in cases that involve a plaintiff attempting to cash a check at a bank. In *Craig*, an African American customer attempted to cash a check, and the bank "completed service but only after effectively requiring a phone call from [the plaintiff's] attorney upon whose account the check was drawn." *Craig*, 2004 WL 817149, at *3. The court concluded that the plaintiff had sufficiently alleged that the bank had imposed additional conditions on the customer's ability to contract. *Id.* at *1. In *Knight*, the court denied the bank's motion to dismiss because the plaintiff alleged the imposition of a condition that was not applied to other customers. *Knight v. Wells Fargo Bank NA*, 459 F.Supp.3d 1288, 1292-93 (N.D. Cal. 2019). When attempting to cash two checks, the plaintiff, an African American man, was told that the bank required verification of the checks by the issuer. *Id.* at 1290. The bank agreed to cash the checks only after receiving a phone call from the check issuer, even though the issuer had not previously been required to speak to the bank for a check to be successfully cashed. *Id.* As in *Craig* and *Knight*, the bank allegedly initially refused to cash Waller's check, and agreed to do so only after obtaining telephone verification from the issuer that he had written the check. The verification phone call imposed an additional condition on cashing Waller's check.

A district court facing similar allegations rejected the defendant bank's motion to dismiss the plaintiff's § 1981 claim on the basis that "the branch did, at some point, cash the check." *Middleton v. Wells Fargo Bank, N.A.*, 474 F.Supp.3d 1290, 1296-97 (N.D. Ga. 2020). The bank refused to cash the plaintiff's check after it determined the check to be fraudulent. *Id.* at 1292. The bank called the police and demanded that the plaintiff leave the premises. *Id.* at 1293. The plaintiff instead waited outside the bank for the police to arrive. *Id.* After police determined that the check was not fraudulent, the bank cashed the check. *Id.* The court considered the allegation that the bank cashed the check only because the plaintiff waited for the police to arrive rather than

10

leaving as the bank demanded. *Id.* at 1297. "The defendant thwarted the plaintiff's attempt to contract when it unequivocally refused to cash the check and ordered her to leave." *Id.* "[T]he fact that she was successful in her second attempt is immaterial." *Id.*

As in *Middleton*, Waller did not leave the premises after the bank ordered her to do so, but rather waited for the police to arrive, at which point the bank sought confirmation from the third-party check issuer.

Waller has successfully pleaded the third requirement of a § 1981 claim. However, the failure to show discriminatory intent requires dismissal of the § 1981 claim without prejudice and with leave to amend.

### 4. Activities Covered by § 1982

Waller alleges that the bank refused to return her check after refusing to cash it. (Docket Entry No. 14 at 9). She alleges that the bank kept her driver's license and threatened to cut it up. (*Id.* at 4, 9). Waller alleges that she was denied due process by the defendants "continuously keeping [her] personal property . . . then calling police and security to remove her from the bank without her property." (Docket Entry No. 1 at 3). Waller argues that she asserted a valid § 1982 claim because the statute covers personal property. (Docket Entry No. 14 at 9).

The defendants argue that "§ 1982 addresses housing, real property, road access to property, and similar real estate issues." (Docket Entry No. 11 at 10). They assert that "courts addressing § 1982 claims uniformly require a connection to real estate." (Docket Entry No. 16 at 4). The defendants also point out that they temporarily maintained possession of Waller's check and identification, causing delay which they argue is not enough to maintain a § 1982 claim. (*Id.*).

The language of § 1982 refers to both real and personal property. Although § 1982 has largely been applied to real property claims, this application is not as uniform as the defendants

11

suggest. Courts have accepted allegations about personal property as sufficient to allege property deprivation under § 1982. *See Sheffield v. Lee*, No. 3:08-CV-1102-L, 2008 WL 4966624, at *5 (N.D. Tex. Nov. 18, 2008) ("In the retail context, § 1982 protects a citizen's ability to purchase personal property.") (citing *Morris v. Off. Max, Inc.*, 89 F.3d 411, 415 (7th Cir. 1996)); *Zuyus v. Hilton Riverside*, 439 F. Supp. 2d 631, 636 (E.D. La. 2006) (allegations that security guards searched the plaintiff's bag were sufficient for a § 1982 claim for an invasion of personal property); *Ennis v. Edwards*, No. Civ.A. 02-0769, 2003 WL 1560113, at *5 (E.D. La. Mar. 25, 2003) (§ 1982 claim fails because plaintiff failed to sufficiently plead discriminatory intent, not because the property involved was a vehicle); *Johnson v. City of Ecorse*, 137 F. Supp. 2d. 886, 891 (E.D. Mich. 2001) (a § 1982 claim survived summary judgment because the plaintiff provided competent evidence that his tools were missing); *Terry v. Elmwood*, 307 F. Supp. 369, 375 (N.D. Ala. 1969) ("cemetery lots are property within the meaning of § 1982 because the words real and personal property as used in the statute exhaust all the possibilities of types of property"). Waller's check and driver's license are personal property that are covered by the statute.

The defendants support their temporary possession argument by asserting that § 1981 is the tandem statute of § 1982 and citing a case that "illustrates that a delay in realizing a covered right is not actionable discrimination." (Docket Entry No. 16 at 4); *see Singleton v. Charles Par. Sheriff's Dep't*, 306 F. App'x 195 (5th Cir. 2009). Courts have frequently interpreted the § 1981 and § 1982 in tandem. *Powell v. Zurich Am. Ins. Co.*, 653 F. App'x 292, 297 n.5 (5th Cir. 2016); *see also Tillman v. Wheaton-Haven Recreation Ass'n*, 410 U.S. 431 (1973) ("historical interrelationship between § 1981 and § 1982"). Applying *Middleton*, the allegations of the bank's temporary possession of, and refusal to return, Waller's check and identification allege an actionable delay.

12

Waller has sufficiently alleged conduct under § 1982, but she has not sufficiently alleged that the defendants acted with discriminatory intent. The dismissal of the § 1982 claim is granted without prejudice and with leave to amend.

**B.     Section 1983**

Section 1983 provides "a federal forum for claims of unconstitutional treatment at the hands of state officials" or those working in concert with them. *Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2167 (2019) (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)); see also *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state an actionable claim under § 1983, the plaintiff must allege that the defendant, while acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution, or a federal statute, or both. *See Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003). To act "under color of state law," the defendant must be either an officer of the state or "a willful participant in joint action with the State or its agents." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 319 (5th Cir. 2019) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).

Waller has not pleaded facts showing that Escamilla, Whiddon, or the bank were state actors. In *Wilkerson*, the plaintiff, an African American woman, brought a § 1983 claim based on a JPMorgan Chase bank's refusal to cash her checks. *Wilkerson v. Chase Bank*, No. 21-cv-1038, 2021 WL 3356372, at *1 (S.D. Tex. July 1, 2021). The court determined that "JPMorgan Chase is not a state actor" because the plaintiff failed to plausibly allege that the bank took any action "under color of law." *Id.* at *2. *See also Wade v. Bank of Am., N.A.*, 471 F. App'x 312, 313 (5th Cir. 2012) (the plaintiff had no claim under § 1983 because the Bank of America defendants were not state actors); *Cheyenne & Arapaho Tribes v. First Bank & Tr. Co.*, 560 F. App'x 699, 708 (10th Cir. 2014) (the bank did not act under color of state law); *Hoskins v. TCF Nat'l Bank*, 248 F. Appx.

13

742, 743 (7th Cir. 2007) (a bank was not a state actor because the plaintiff's allegations described purely private business activities); *Bailey v. Harleysville Nat'l Bank & Tr.*, 188 F. App'x 66, 68 (3d Cir. 2006) (a bank was not a state actor despite its regulation by the government and despite its act of summoning the police to deal with a disturbance); *Daniels v. Charter One Bank*, 39 F. App'x 223, 225 (6th Cir. 2002) (holding that the bank was not a state actor subject to liability under § 1983). The facts Waller alleged do not provide a plausible basis for a claim under § 1983. Because there is no plausible basis to amend this claim, it is dismissed with prejudice and without leave to amend.

  **C.** **Defamation**

Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (quoting *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)). Defamation can be oral or written—that is, slander or libel. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *see* Tex. Civ. Prac. & Rem. Code Ann. § 73.001. Under Texas law, to prevail in a defamation suit, a plaintiff must show that the defendant (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

Waller alleges defamation within the prayer for relief section in her complaint. (Docket Entry No. 1 at 3). After the defendants pointed to deficiencies in her defamation claim, she added allegations in her response to the motion to dismiss. (Docket Entry No. 14). In her response,

Waller alleges that the assertion that her check was fraudulent was false. (*Id.* at 5). She alleges that when Whiddon made this statement, her "mother was present," and that bank employees and other customers heard the statements. (*Id.* at 10).

If the court considers the additional allegations in the response to the motion to dismiss, Waller has sufficiently alleged the first requirement: publication. Waller also meets the second requirement; she has alleged a statement that is defamatory per se because it accuses her of a crime. *See Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984); *Buck v. Savage*, 323 S.W.2d 363, 369 (Tex. App.—Houston 1959, writ ref 'd n.r.e.). Waller has not, however, alleged facts that could show that the defendants "knew or should have known" that the statement was false. *See Copeland v. State Farm Ins. Co.*, 657 F. App'x 237, 240 (5th Cir. 2016) (the defamation claim failed because the plaintiff provided no allegation that the statement was made with negligence as to whether the statement was true).

Waller has failed to plead sufficient facts for a defamation claim, but the bank has not shown that leave to amend would be futile. This claim is dismissed without prejudice and with leave to amend.

## IV. Conclusion

The defendants' motion to dismiss (Docket Entry No. 11) as to the § 1981, § 1982, and defamation claims is granted without prejudice and with leave to amend because the defendants have not shown that amendment would be futile. The defendants' motion to dismiss the § 1983

claim is granted with prejudice and without leave to amend. An amended complaint may be filed no later than August 19, 2022.

      SIGNED on July 6, 2022, at Houston, Texas.

                                                                               Lee H. Rosenthal
                                                     Chief United States District Judge